IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**

        Plaintiff,

vs.

**CASH OTRADOVEC,**

        Defendant.

Case No. 21-cr-44-jdp

---

**DEFENDANT'S SENTENCING MEMORANDUM**

---

### I.   HISTORY OF THE OFFENSE

Child pornography is a horrific form of child abuse. The damage that it causes to the children who are victimized is immeasurable. No one can condone the viewing of or making child pornography. However, each person's involvement with child pornography should be viewed on a case-by-case basis.

The Presentence Report accurately describes Mr. Otradovec's behavior in producing child pornography. However, this case is significantly different from the typical child pornography production case. Child pornography is illegal for a number of reasons. First, the children do not have a say in deciding to partake or not. Second, the children are not mature enough to make that decision. The typical producer of child pornography uses children that he or she or someone controls and films those children performing explicit sexual acts, and the child is forced to participate. That is what makes it different from legal adult pornography and makes it illegal. This case is somewhat

different. Here, 15-17 year old boys are trolling the internet with the hope of finding women with whom they can chat or actually meet in person. Granted 15-17 year olds may not be savvy to the predators that exist on the internet, but they are on line because they choose to do so. The difference in this case compared to most other child pornography cases is that these boys did have a choice. They could easily have said "no" and refused to participate in Mr. Otradovec's demands or requests. We understand that Mr. Otradovec blackmailed those boys into providing sexually explicit activity, and on one occasion did send the video or image to the victim's family.

The government will argue that these boys were still under 18, and the law was designed to protect children because of their maturity level. The government will also probably argue that Mr. Otradovec targeted this age group when he could have easily targeted 18-year-olds. Had he done that, he would not be in the position he is today.

The defense raised this issue in the detention hearing, and this Court did not agree with defense counsel's assessment that some responsibility should be placed on the behavior of these boys.

There is no doubt that Mr. Otradovec concocted an elaborate scheme to persuade, induce, entice or coerce these boys to provide sexually explicit conduct for his own enjoyment. There is no doubt that this scheme certainly took some planning. The text messages between the boys and Mr. Otradovec indicate that the boys were interested in encountering what they thought was a 22-year-old female for the purposes of some type of sexual relationship. The Presentence Report contains only limited portions of the text messages between each boy and Mr. Otradovec. There are many other texts or emails in which the boys state they would like to meet a Becky for purposes of sexual activity (see Exhibit 1). While this does not excuse Mr. Otradovec's elaborate scheme, it does

place the scheme in context. It also shows that Mr. Otradovec is significantly different than the typical producer of child pornography who forces children to engage in sexually explicit activity in front of the camera.

## II. HISTORY AND CHARACTER OF THE DEFENDANT

Mr. Otradovec has a history of physical injuries which he received from his participation in the military, an IED explosion, and from when he was attacked on April 9, 2017, by five other males (Exhibit 2). He was diagnosed with PTSD when he was in the military and stationed in Afghanistan. He has a history of a post-concussive disorder which was noted in his medical records from the VA.

It is also abundantly clear that Mr. Otradovec has, up until this time, an issue with his sexual identity. In preparation for his detention hearing, Mr. Otradovec underwent a psychosexual evaluation with Sharon Kelley. She determined that Mr. Otradovec did not currently have PTSD (Docket No. 12, p. 12).

Mr. Otradovec enlisted in the Marines in 2008, and was on active duty for four years starting in 2009. (He spent the last four years in the Reserves and was discharged in February, 2017.) He graduated from the Marine Corps Engineering School in 2010. He was sent to Afghanistan for two seven-month deployments. He was responsible for demilitarizing IED belts, providing supplies, helping to build bases and helping to rescue another unit. He experienced a close proximity IED explosion and engaged in armed combat with Taliban troops. He received a disability rating from the VA. When he was discharged, the VA doctors diagnosed him with post traumatic stress disorder. After leaving the Marines, he obtained a college degree in history and political

science from the University of Wisconsin in 2019. He applied to the FBI, and that is when he was arrested in this matter.

As many veterans experience, he suffered from loneliness and mild depression upon his release from the military. He also, like many others, had a problem with alcohol. The altercation with his step-father was alcohol related although he was protecting his mother after she was threatened by the step father. Obviously he would benefit from the RDAP program. He adequately and completely explained how he became involved in this particular instance to Sharon Kelley during the interview process (Docket 12, p. 6). He started his charade as being two women in 2016. He was chatting with people who were at least 18 years old. He then made an exception for one person who was 17, and eventually allowed that exception to continue to communicating with boys as young as 15. Like many who venture into the pornographic area, he was lonely, and unlike many also questioned his sexual identity.

It is important to note that Mr. Otradovec told Sharon Kelley that he is amenable to treatment (Docket No. 12, p. 7). He indicated he would be willing to do anything. He believes he has an addictive personality and would like to receive as much treatment as he can while in the prison system.

While he has been in the Dane County Jail, he has completed a number of programs. He is attempting to make the best out of a horrible situation. The letters from the jail social workers confirm he wants to turn his life around. Also attached are copies of all the courses and activities which he has completed while incarcerated in the Dane County Jail (Exhibit 3).

Dr. Kelley required Mr. Otradovec to complete a number of psychometric tests. These included the Minnesota Multi Phasic Personality Test, the Trauma Symptom Inventory,

Multidimensional Inventory of Development, Sex and Aggression Test. The MMPI indicates that he avoids social situations and feels uncomfortable around others.

The Trauma Symptom Inventory indicated that Mr. Otradovec accepted responsibility for what he did. He lacked self-confidence and would vary his behavior in order to fit in with social groups. This test indicated that Mr. Otradovec experiences confusion about his own attitudes and beliefs, and he may struggle with identity problems.

Dr. Kelley scored him on the Static 99 as in the above average risk category. His sexual recidivism rate is 15% over five years or, in other words, an 85% probability that he will not sexually reoffend in the next five years. Of course he will be in prison during that time. He scored in the above average range because he has never lived with an intimate partner, he is young, and the alleged victims to him were strangers. Dr. Kelley concluded that he has been struggling with his sexual identity. The fact that he is more interested in males has been problematic for him. She indicates that based on his test results, he would benefit from sex offense specific treatment and lowering his future risk. She indicated that during the interview with her, Mr. Otradovec demonstrated good insight into factors related to his current allegations, including feelings of loneliness, identity problems, relationship difficulties, problems with alcohol use, and difficulties affecting managing his anger. He described a willingness to participate in treatment for those issues (Docket 12, p. 13). Dr. Kelley viewed him as someone who was insightful and amenable to treatment, which would greatly reduce his sexual risk as a result of treatment interventions in these areas. She felt his potential for being able to succeed in the community was good. Id.

The character letters in support all have similar themes (Exhibit 4). He is a caring and helpful individual. The letter from his grandfather indicates that he probably will never spend

5

any time with his grandson again. He describes Mr. Otradovec as a "great person." The other letters explain that Mr. Otradovec has always been a person to help others and put other's needs above his own. Others see him as remorseful and sad that he has put himself in this predicament. The letters from the military, his family and his friends all indicate that he is a wonderful human being who obviously made some very poor decisions. This offense does not define him as a person.

### III.     18 U.S.C. § 3553 FACTORS.

18 U.S.C. § 3553 indicates:

> The Court shall impose a sentence sufficient but not greater than necessary to comply with the purposes set forth in ¶ 2 of this subsection.

Fifteen years in prison is a sufficient sentence to punish Mr. Otradovec for his behavior, to protect society from future behavior, as he will undergo sex offender treatment while in the prison system, to give him a chance at rehabilitation, and not unduly depreciate the seriousness of his offense. It also certainly sends a strong message to others who are similarly situated that if one becomes involved in this type of behavior, the minimum mandatory prison sentence is 15 years.

Mr. Otradovec received five criminal history points for engaging in a pattern of activity involving prohibited sexual conduct pursuant to § 4B1.5(b)(1). While we agree that this enhancement does apply, it increased his guideline range from 135-168 months to 235-293 months. We realize that he engaged in a pattern of sexual activity with a number of boys. Here the Sentencing Commission has decided that a pattern requires a five-level enhancement. That increase more than doubles his guideline range. We think this Court should take that into consideration in determining the appropriate sentence. We do believe, as stated above, that all of the sentencing

factors indicate that a 15-year prison sentence is more than satisfactory to meet the requirements under 18 U.S.C. § 3553 and, therefore, request that the Court do so.

Dated this 16th day of March, 2022.

        EISENBERG LAW OFFICES, S.C.

        /s/ Mark A. Eisenberg
        Mark A. Eisenberg
        State Bar Number:  1013078
        308 E. Washington Avenue
        P. O. Box 1069
        Madison, WI  53701-1069
        Telephone: (608) 256-8356
        Fax: (608) 256-2875
        E-mail: mark@eisenberglaw.org
        Attorneys for Defendant, Cash Otradovec

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2022, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

        Laura A. Przybylinski Finn, Assistant United States Attorney
        Julie S. Pfluger, Assistant United States Attorney

In addition, I hereby certify that on March 16, 2022, I emailed the foregoing to U.S. Probation Officer Mariah A. Stieve at Mariah_Stieve@wiwp.uscourts.gov.

        /s/ Mark A. Eisenberg
        Mark A. Eisenberg